UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JONATHAN MULLANE, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 18-cv-12412-DJC |
| ZURICH AMERICAN INSURANCE COMPANY and A MEDIUM CORPORATION, | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                                    **May 21, 2019**

**I.      Introduction**

Plaintiff Jonathan Mullane ("Mullane") has filed this lawsuit against Defendants Zurich American Insurance Company ("Zurich American") and A Medium Corporation ("Medium") (collectively, "Defendants") alleging violations of federal securities law (Counts I-IV), including 17 C.F.R. § 180.1, 15 U.S.C. §§ 77e, 77e(c) and 77q(a)-(b) (the "Securities Act of 1933") and 15 U.S.C. §§ 78j(b), 78j(c)(1), 78o(a)(1), and 78t (the "Securities Exchange Act of 1934"), and bringing claims for promissory estoppel (Count V), fraud in the inducement (Count VI), violation of Mass. Gen. L. c. 93A (Count VII-VIII) and intentional infliction of emotional distress (Count IX). Defendants have moved to dismiss. D. 10; D. 27. For the reasons stated below, the Court ALLOWS Defendants' motions.

## II. Standard of Review

### A. Motion to Dismiss for Lack of Personal Jurisdiction

To meet the burden of establishing the Court has personal jurisdiction under the prima facie standard, Mullane must "demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the Constitution." United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001) (citing United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 987 F.2d 39, 44 (1st Cir. 1993)). The Court considers the facts alleged in the pleadings as well as the parties' supplemental filings. See Sawtelle v. Farrell, 70 F.3d 1381, 1385 (1st Cir. 1995). The Court will "take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim." Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998). The Court will not "credit conclusory allegations or draw farfetched inferences," Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994), and recognizes that it is the plaintiff's burden to "verify the facts alleged through materials of evidentiary quality," Killion v. Commonwealth Yachts, 421 F. Supp. 2d 246, 252 (D. Mass. 2006) (quoting Barrett v. Lombardi, 239 F.3d 23, 27 (1st Cir. 2001)). The Court is also required to "add to the mix facts put forward by the defendants, to the extent that they are uncontradicted." Mass. Sch. of Law, 142 F.3d at 34.

## III. Factual Background

Unless otherwise noted, the facts are as alleged in the complaint, D. 1-1. GoexPro International ("Goex") operates a cryptocurrency exchange business that facilitates trades between various cryptocurrencies. D. 1-1 ¶ 41. As part of this business, Goex solicited loans from consumers, including Mullane, to increase its "capital reserves" to facilitate the rapid exchange of cryptocurrencies. Id. ¶ 42. Goex used Medium's online publishing platform to promote its

2

cryptocurrency business.  Id. ¶ 10; D. 1-1 at 19.  Between May 21, 2018 and June 24, 2018, Mullane loaned DASH and ETH cryptocurrencies to Goex.  D. 1-1 ¶¶ 8, 34-39.  When the loans matured, Goex refused to return the principal amounts and interest owed to Mullane, causing him to incur an "actual out-of-pocket loss" of $68,623.84.  Id. ¶ 46.  Goex also blocked Mullane's access to his online account on the Goex website.  Id. ¶ 47.  On October 5, 2018, Mullane sent Medium a demand letter asserting that Medium engaged in "unfair and deceptive trade practice" by allegedly failing to notify consumers that it enjoyed a "financial relationship" with Goex and by failing to disclose that it did not endorse Goex or guarantee the veracity of Goex's representations purportedly in violation of Mass. Gen. L. c. 93A.  D. 10-1 at 1-2.[1]

According to corporate documentation that Mullane purportedly reviewed on Goex's website, Goex asserts that it is a subsidiary of Zurich Investment Management AG ("Zurich Investment"), a corporation registered in Zurich, Switzerland.  D. 1-1 ¶ 14.  Mullane alleges that Zurich Investment, in turn, is wholly owned by Zurich Insurance Group ("Zurich Insurance").  Id. ¶ 23.  Mullane also alleges that Goex "forged and digitally altered" corporate documents establishing a relationship between Goex and Zurich Investment.  Id. ¶ 14.

The complaint does not contain allegations regarding the corporate relationship (if any) between Zurich American and the other Zurich entities:  Zurich Investment and Zurich Insurance.  Mullane nonetheless appears to allege that he sent an email to Zurich American on or about September 29, 2018 with copies of corporate documentation in which Goex purportedly asserts

---

[1] In ruling on a motion to dismiss, "a judge can mull over 'documents incorporated by reference in [the complaint].'"  Lydon v. Local 103, Int'l Bhd. of Elec. Workers, 770 F.3d 48, 53 (1st Cir. 2014) (alteration in original) (quoting Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008)).  Although Mullane did not attach the October 5, 2018 demand letter to the complaint it was referenced therein, D. 1-1 ¶ 135, and filed as an attachment to Medium's motion to dismiss, D. 10-1.  The Court, therefore, considers Mullane's demand letter in resolving the instant motions.

being wholly owned by Zurich Investment.  Id. ¶ 32.  Mullane contends that Zurich American should have, but refused to, publicly acknowledge Goex's allegedly improper use of Zurich Investment's name.  Id. ¶ 33.

## IV. Procedural History

Mullane instituted this action in Suffolk Superior Court on November 9, 2018.  D. 1-1. Medium removed it to this Court on November 19, 2018.  D. 1.  Medium and Zurich American then moved to dismiss, respectively.  D. 10; D. 27.  The Court heard the parties on the pending motions and took these matters under advisement.  D. 32.

## V. Discussion

### A. Personal Jurisdiction

Defendants contend the prima facie case for personal jurisdiction has not been established and seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(2).  As a preliminary matter, the Court assesses Defendants' citizenship.  Medium is a Delaware corporation with a principal place of business in California.  D. 1-1 ¶ 2.  Zurich American is incorporated in the State of New York and has its principal place of business in Illinois.  Id. ¶ 3.  Because the Defendants are not alleged to be citizens or residents of Massachusetts, the Court must determine whether "exercising personal jurisdiction . . . comports with both the forum's long-arm statute and the requirements of the United States Constitution."  SCVNGER, Inc. v. Punchh, Inc., 478 Mass. 324, 325 (2017) (citing World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 290 (1980)).  The Court's analysis of the Massachusetts long-arm statute "precede[s] consideration of the constitutional question."  Id. at 325.

#### 1. Massachusetts Long-Arm Statute

The Massachusetts long-arm statute, Mass. Gen. L. c. 223A, § 3, enumerates eight grounds on which a nonresident defendant may be subjected to personal jurisdiction.  Mullane argues that

the Court has personal jurisdiction over both Defendants pursuant to sections 3(a) and 3(d) and as to Medium under section 3(c) of the Massachusetts long-arm statute. See D. 14 at 6; D. 29 at 7. These sections provide for the exercise of personal jurisdiction over an individual in a cause of action "arising from the person's (a) transacting any business in this commonwealth; . . . (c) causing tortious injury by an act or omission in the commonwealth; . . . (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth." Mass. Gen. L. c. 223A, § 3(a), (c)-(d).

"For jurisdiction to exist under § 3(a), the facts must satisfy two requirements—the defendant must have transacted business in Massachusetts, and the plaintiff's claim must have arisen from the transaction of business by the defendant." Exxon Mobil Corp. v. Attorney Gen., 479 Mass. 312, 317 (2018) (quoting Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994)). The "transacting business" clause is construed "broadly." Shipley Co. v. Clark, 728 F. Supp. 818, 821 (D. Mass. 1990) (citation omitted).

Mullane appears to assert the Court has personal jurisdiction under § 3(a) over Medium because Goex utilized Medium's website to solicit customers, including residents of Massachusetts. See D. 1-1 ¶ 12 (alleging that "Defendant Medium knew, or was 'willfully blind' in not knowing, that its website was openly soliciting investments from Massachusetts consumers"). Mullane has not alleged, however, that Medium conducted any business in Massachusetts and the existence of a website accessible to Massachusetts residents, without more, is not sufficient to authorize personal jurisdiction over Medium under § 3(a). See Pac. Indem. Co. v. NEDI Constr. LLC, Civ. A. No. 12-11844-RWZ, 2014 WL 496842, at *4 (D. Mass. Feb. 7,

2014) (explaining that "[t]he mere existence of a website that is visible in a forum and that gives information about a company and its products is not enough, by itself, to subject a defendant to personal jurisdiction in that forum" (alteration in original) (quoting Cossaboon v. Me. Med. Ctr., 600 F.3d 25, 31 (1st Cir. 2010))).

With respect to Zurich American, Mullane asserts that § 3(a) confers jurisdiction because Zurich American transacts business in Massachusetts through "various trade names and wholly-owned subsidiaries." D. 29 at 7. Zurich American admits that it sells insurance policies in Massachusetts. D. 27-1 at 12. There is, however, no alleged connection between Zurich American's insurance business and this cause of action. Rather, Mullane's jurisdictional claim appears to depend on whether the alleged Massachusetts contacts of corporate affiliates may be imputed to Zurich American. D. 29 at 4. The "theory for imputing contacts from one entity to another is a theory based on piercing the corporate veil." Scallop Imaging, LLC v. Blackhawk Imaging, LLC, Civ. A. No. 17-cv-10092-ADB, 2018 WL 1440314, at *5 (D. Mass. Mar. 22, 2018) (quoting Katz v. Spiniello Cos., 244 F. Supp. 3d 237, 253 (D. Mass. 2017)). "The veil piercing standard in Massachusetts is demanding, as corporations are presumed to be separate and distinct entities notwithstanding [the] relationships between them." Id. (alteration in original) (citations and internal quotation marks omitted).

Under Massachusetts law, disregard of corporate separateness is permitted where two factors are met: (1) "when there is active and direct participation by the representatives of one corporation, apparently exercising some form of pervasive control, in the activities of another and there is some fraudulent or injurious consequence of the intercorporate relationship," or (2) "when there is a confused interminingling [sic] of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or

serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting." My Bread Baking Co. v. Cumberland Farms, Inc., 353 Mass. 614, 619 (1968).

Here, Mullane opines that Zurich American, Zurich Insurance and Zurich Investment are "one and the same" for the purpose of establishing personal jurisdiction and liability as to Zurich American. D. 29 at 4. The complaint, however, fails to allege any connection between Zurich American and Zurich Insurance or the latter's allegedly wholly-owned subsidiary Zurich Investment. See D. 1-1 ¶ 23. Relying on statements purportedly from Zurich Insurance's website and which were not attached to the complaint or Mullane's opposition, Mullane contends that Zurich American and Zurich Investment are "significant" subsidiaries of Zurich Insurance. D. 29 at 5. Even considering such allegations, the corporate veil between parent and subsidiary may be pierced only where the "parent exercises 'some form of pervasive control' of the activities of the subsidiary 'and there is some fraudulent or injurious consequence of the intercorporate relationship.'" Scott v. NG U.S. 1, Inc., 450 Mass. 760, 766 (2008) (quoting My Bread Baking, 353 Mass. at 619). Mullane's generic and unsupported allegations of a relationship between Zurich American and Zurich Insurance establish neither pervasive control nor fraud. With respect to Zurich Investment, Mullane offers the unsupported assertion that Zurich American's counsel responded to his demand letter regarding conduct committed by Zurich Investment. D. 29 at 5. Mullane has similarly failed to meet the "demanding" veil piercing standard as to Zurich Investment. In sum, the conclusory allegations, even when viewed in the light most favorable to Mullane, fail to plausibly justify the measure of piercing the corporate veil and conferring jurisdiction over Zurich American for acts committed by Zurich Investment, Zurich Insurance or other alleged corporate affiliates.

Notwithstanding Mullane's inability to establish an alter ego theory of jurisdiction here, Mullane has not even alleged any connection between business transactions in Massachusetts involving Zurich American or its affiliates and Goex's alleged failure to repay him. See Sigros v. Walt Disney World Co., 129 F. Supp. 2d 56, 65 (D. Mass. 2011) (explaining that a "but for" test applies for determining when an injury "arises" from transacting business in Massachusetts (citing Tatro, 416 Mass. at 770-71)). The Court concludes that § 3(a) does not authorize personal jurisdiction over Zurich American.

Mullane also contends that § 3(c) confers jurisdiction over Medium due to the "unfair and deceptive" acts of Medium's attorney prior to the institution of this litigation. D. 14 at 6. According to the complaint, Medium's attorney allegedly failed to make a reasonable settlement offer and falsely accused Mullane of engaging in the unauthorized practice of law in correspondence sent to Mullane's address in Somerville, Massachusetts. D. 1-1 ¶¶ 122-137; see D. 1-1 at 23-24 (providing an October 29, 2018 letter from Medium's attorney that appears to respond to Mullane's Chapter 93A demand). Even assuming that mailing the letter at issue satisfies the "act" requirement of § 3(c), see Murphy v. Erwin-Wasey, Inc., 460 F.2d 661, 664 (1st Cir. 1972) (explaining that "[w]here a defendant knowingly sends into a state a false statement, intending that it should there be relied upon to the injury of a resident of that state, he has, for jurisdictional purposes [under § 3(c)], acted within that state"), Mullane has failed to plausibly allege an injury arising from the purportedly false and threatening statements in the letter,[2] see id. at 665 (declining to exercise jurisdiction under § 3(c) where plaintiff failed to allege that he was

---

[2] Although Mullane opines that "all of Defendant Medium's acts and omissions, collectively, serve only to unlawfully prevent Plaintiff from exercising his constitutional right to petition the judiciary for redress," D. 1-1 ¶ 133, the Court need not credit conclusory legal allegations in assessing the sufficiency of the complaint, Guadalupe-Báez v. Pesquera, 819 F.3d 509, 514 (1st Cir. 2016) (citing Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)).

deceived by defendant's acts, which included mailing a letter to plaintiff's Massachusetts address); see also Med. Spectroscopy, Inc. v. Zamir, No. 1584CV03390, 2016 WL 4077289, at *2 (Mass. Super. Ct. June 14, 2016) (holding plaintiffs had not satisfied burden under § 3(c) where harm did not "arise from or out of" defendant's misconduct in Massachusetts). Medium's Massachusetts communications, as alleged, do not support jurisdiction under § 3(c).

Finally, the court considers § 3(d) as to both Defendants. Mullane has not alleged any facts in support of his assertion that Medium "does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth." Mass. Gen. L. c. 223A, § 3(d). That Medium maintains a website accessible in Massachusetts "does not establish jurisdiction in the absence of any specific showing by the plaintiffs that the Web site did anything beyond providing information." Roberts v. Legendary Marine Sales, 447 Mass. 860, 865 (2006). Mullane has not alleged the requisite specific showing here. As to Zurich American, Mullane offers the unsupported assertion that Zurich American conducts "substantial business" in Massachusetts. D. 29 at 7. Such conclusory allegations do not warrant the exercise of personal jurisdiction here. See Ticketmaster-N.Y., 26 F.3d at 203 (explaining that the Court need not "credit conclusory allegations or draw farfetched inferences"). Accordingly, the Massachusetts long-arm statute does not confer personal jurisdiction over Defendants.

2. *Due Process*

There are two types of personal jurisdiction to consider in the constitutional analysis: general and specific. Cossaboon, 600 F.3d at 31. No set of facts alleged here support the exercise of general jurisdiction over Defendants. See Daimler AG v. Bauman, 571 U.S. 117, 137 (2014) (explaining that "[w]ith respect to a corporation, the place of incorporation and principal place of

9

business" are the "paradig[m]" bases for general jurisdiction (second alteration in original) (citation omitted)). Specific jurisdiction "may only be relied upon where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts." Cossaboon, 600 F.3d at 31 (citation omitted). The specific jurisdiction inquiry is threefold: relatedness, purposeful availment and reasonableness. Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 9 (1st Cir. 2009) (quoting N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 25 (1st Cir. 2005)). The Court must find that all three are present to assert specific personal jurisdiction over a defendant. See Harlow v. Children's Hosp., 432 F.3d 50, 57 (1st Cir. 2005). The plaintiff bears the burden of proof on all three elements. See Rodriguez v. Samsung Elecs. Co., 827 F. Supp. 2d 47, 50 (D. Mass. 2011).

a) Relatedness

The relatedness inquiry focuses asks whether "the claim underlying the litigation . . . directly arise[s] out of, or relate[s] to, the defendant's forum-state activities." Astro-Med, 591 F.3d at 9 (alteration in original) (citation omitted). It is a "flexible, relaxed standard," id., but still requires a causal relationship between Mullane's claim and Defendants' forum-related conduct, Harlow, 432 F.3d at 61. Although not precisely proximate cause, "due process demands something like a 'proximate cause' nexus." Id. (quoting Cambridge Literary Props., Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg., 295 F.3d 59, 65 (1st Cir. 2002)). "[T]he defendant's in-state conduct must form an important, or [at least] material, element of proof in the plaintiff's case." Id. (second alteration in original) (citations and internal quotation marks omitted).

Mullane contends that Medium allowed Goex to advertise its cryptocurrency business to customers in Massachusetts and that Medium's counsel engaged in allegedly unfair and deceptive conduct in the forum. For the reasons previously explained, the alleged third-party activity on Medium's website does not confer jurisdiction over Medium. The Court recognizes that the alleged conduct of Medium's counsel does, however, form part of Mullane's Chapter 93A claim

10

against Medium. By contrast, Mullane has not alleged a nexus between the instant litigation and forum-related business conducted by Zurich American or its affiliates (assuming *arguendo* that such affiliated conduct could be computed to Zurich American).

### b) Purposeful Availment

"The purposeful availment requirement ensures that jurisdiction is not premised on 'random, isolated, or fortuitous' contacts with the forum state," Weinberg v. Grand Circle Travel, LLC, 891 F. Supp. 2d 228, 246 (D. Mass. 2012) (citing Sawtelle, 70 F.3d at 1391), and, even when a defendant has limited contacts with Massachusetts, if those contacts are not related to any claim in the lawsuit, they are not deemed relevant to the specific jurisdiction analysis, Copia Commc'ns, LLC v. AMResorts, L.P., 812 F.3d 1, 5 (1st Cir. 2016); Harlow, 432 F.3d at 60-61 (explaining that contacts relevant for specific jurisdiction are those to which the cause of action are related). Purposeful availment turns on voluntariness and foreseeability. C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 66 (1st Cir. 2014). "Voluntariness requires that the defendant's contacts with the forum state proximately result from actions by the defendant himself." Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 36 (1st Cir. 2016) (citations and internal quotation marks omitted) (emphasis in original). "Foreseeability requires that a defendant's contacts with the forum state are 'such that [the defendant] could reasonably anticipate being haled into court there.'" Id. (alteration in original) (quoting Adelson v. Hananel, 510 F.3d 43, 50 (1st Cir. 2007) (internal quotation marks omitted)).

Mullane asserts that Medium maintained a website that third parties may use to promote their businesses, including to Massachusetts residents, and Medium's local counsel responded to Chapter 93A correspondence prior to the initiation of this suit. At best, Medium's contacts with the forum were involuntary such that it would be unreasonable to infer purposeful availment from such acts. Mullane has also failed to satisfy this prong of the analysis as to Zurich American.

11

Zurich American's insurance business in Massachusetts is not related to this cause of action and, as a result, Zurich American could not reasonably anticipate being subjected to jurisdiction in Massachusetts in connection with the instant action. The Court, therefore, concludes the Defendants did not "purposefully avail[] [themselves] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958) (citing Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945)).

    c)  Reasonableness

The reasonableness inquiry is based on a balancing of the following "Gestalt factors": "(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." Cossaboon, 600 F.3d at 33 n.3 (quoting Harlow, 432 F.3d at 67). Although Defendants have not demonstrated a "special or unusual burden," Risktimetry Analytics, LLC v. Altaira, LLC, 752 F. Supp. 2d 141, 147 (D. Mass. 2010) (quoting Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994)) (finding that travel between Utah and Massachusetts was not a special or unusual burden), the balance of the remaining factors weigh in favor of Defendants. With respect to the second factor, Massachusetts does not have a strong interest in adjudicating this case because of the tenuous connections between the alleged conduct and the Commonwealth. For the third factor, the Court acknowledges Mullane's interest in adjudicating these matters in Massachusetts. As to the fourth factor, as is common in suits between private parties, "the interest of the judicial system in the effective administration of justice does not appear to cut in either direction." Ticketmaster-N.Y., 26 F.3d at 211. Fifth, the Court considers Massachusetts' interest in "providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 (1985).

Because none of the actions giving rise to Mullane's alleged injuries were specifically directed at Massachusetts, this is not an instance where social policy compels adjudication in Massachusetts.

Mullane has failed to meet his burden to establish personal jurisdiction over Defendants under both the Massachusetts long-arm statute and due process principles.[3] In light of this ruling, the Court need not reach the Defendants' alternative bases for dismissal under Rule 12(b)(5) and Rule 12(b)(6).

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS Defendants' motions to dismiss. D. 10; D. 27. In reaching this decision, the Court did not rely on the documents at issue in the pending requests for judicial notice filed by Medium and Mullane, D. 12; D. 31, and Mullane's motions to strike, D. 15, 18, and did not reach Mullane's motion to disqualify Medium's counsel (which related to the Chapter 93A claim, the substance of which the Court did not reach), D. 16, or Medium's motion for sanctions (contained in its opposition to the motion to disqualify counsel), D. 24, and DENIES those motions as moot.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

---

[3] Mullane also suggests personal jurisdiction over Zurich American is appropriate pursuant to Fed. R. Civ. P. 4(k)(2)(A), which confers jurisdiction over a defendant who is served a summons or who files a waiver of service and is not otherwise subject to jurisdiction in any state's courts of general jurisdiction. This rule is inapplicable where, as here, Zurich American could be subject to jurisdiction in New York or Illinois, *i.e.,* Zurich American's place of incorporation or principal place of business, respectively. Moreover, it does not appear that Mullane properly effected service upon any of the Defendants. The summons Zurich American received was addressed to Medium, and Medium has yet to receive a properly executed summons from Mullane. See D. 27-1 at 15; D. 10-11 at 6; D. 1-2; D. 1-3. So even as the Court does not need to reach Defendants' basis for dismissal under Rule 12(b)(5) for failure to effect proper service, certainly Mullane has not established an alternative basis for personal jurisdiction over Zurich American under Rule 4(k)(2)(a) where such involves a showing of effective service (or waiver of same).